## Shillington Borough Annexation

*John W. Speicher*, for Cumru Township.

*Henry M. Koch*, for Shillington Borough.

*James W. Bertolet*, county Solicitor, for Berks County Institution District.

*Elliott B. Goldstan* and *C. Wilson Austin*, for City of Reading.

PER CURIAM, July 20, 1949.—The Borough of Shillington, on April 20, 1949, filed an annexation ordinance in the Court of Quarter Sessions of Berks County, which provides for the annexation of 371

acres, 149.25 perches, property of Berks County Institution District, situate in Cumru Township, Berks County, Pa.

The ordinance was passed pursuant to a petition presented to the council of the borough by Berks County Institution District, alleging that it was the only freehold owner of the 371 acres, 149.25 perches.

On May 13, 1949, the Township of Cumru filed its appeal.

The Berks County Institution District has also petitioned the Borough of Kenhorst to annex another and smaller portion of land, lying generally to the east of the 371 acre tract and the Borough of Kenhorst has adopted an ordinance annexing this additional tract to the Borough of Kenhorst.

There are many issues involved. Because of the disposition made of this matter, it is not necessary to discuss all of them. The following are the ones that now will receive our attention:

1. Does the Township of Cumru have a legal right to appeal?

2. Is the Berks County Institution District "a freeholder" under the statute relating to annexation?

3. Is the act of the Berks County Institution District ultra vires?

What the institution district and the Borough of Shillington are undertaking to do is to change the boundary lines of the Township of Cumru and the Borough of Shillington by annexing land that is now in the Township of Cumru. We are not in accord with the claim of the institution district that the Township of Cumru is not aggrieved and without the right of appeal. No municipality, whether it be the County of Berks, the institution district, or the Borough of Shillington has any power to do any act that would inter fere with another governmental unit, unless the municipality that seeks to interfere proceeds in accordance

with the powers given to it by the legislature. The Township of Cumru alleges that the institution district had no power to do what was done. If this be so, and their action is without warrant of law, it goes without saying that the governmental unit that would be affected by it has not only the right but a duty to contest the matter. If the institution district had no authority or right to do what was done and we should conclude that the Township of Cumru had no right to appeal, we would strip the public of that protection which the law plainly intended to give. If courts were to hold that the institution district acted without legal right, we could not overlook this by concluding that appellant had no right to appeal. To do otherwise we would establish a principle that while the thing was without legal right, we could not correct it because the one who raises the question was not aggrieved. See In re Annexation of Land to Ephrata Borough, 41 Lanc. 513: ". . . the supervisors of a township are proper parties to contest the annexation of part of the township by a borough." (syllabus.)

The City of Reading, upon its petition, was allowed to intervene in the nature of an amicus curiæ, on the allegation that the City of Reading might be adversely affected by the annexation in question.

It is not necessary to point out just to what extent the city, if at all, is interested in the litigation. It is sufficient to say the Borough of Shillington now purchases from the City of Reading some of its water. If the land in question should be annexed to the Borough of Shillington, and developed as a residential area, it is fair to assume that the City of Reading would be called upon to supply water to the residents of the area. The drainage of a large portion of the tract is toward the east, toward the City of Reading, and surface drainage of the tract will eventually be accomplished by the storm sewer facilities of the City of Reading. The city

may have an interest in the future development of this land. It surely has a technical one given to it by virtue of the Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-4001-4005, which grants to the city planning commission of a third class city, jurisdiction over land adjacent to the city for a distance of three miles beyond the corporate limits.

The Act of May 4, 1927, P. L. 519, sec. 425, 53 PS §12461 states:

"Any borough may, by ordinance, annex adjacent land situate in the same or any adjoining county, upon petition of a majority of the freeholders of the territory proposed to be annexed."

The Berks County Institution District is a public corporation created by statute (Act of June 24, 1937, P. L. 2017, 62 PS §2255) and, as such, it holds title to what was formerly known as the "County Poor Farm" and now as the "County Hospital Farm." This tract lies between the City of Reading and the Borough of Shillington to the south of Lancaster Avenue, a very heavily traveled thoroughfare. The institution district, the alleged freeholder, although it is governed by the County Commissioners of the County of Berks, has less authority in many respects than the County of Berks, the Borough of Shillington or any school district.

We have been unable to find any decisions of the appellate courts of this State holding that even a county or a school district are freeholders and proper petitioners under the section of the act of assembly providing for annexation.

In the case of Reber v. Haas, 6 Schuyl. 345, a petition was presented to the Borough of Pinegrove for the annexation of land in Pinegrove Township and lying adjacent to the borough. One of the petitioners was the school district. President Judge Shay said:

"This we do not think would be such a freehold owner as is contemplated by the Act of Assembly. The free-

hold is owned by the municipality and is not of such a nature, and does not have such an interest in the question presented, as in our judgment, would make them one of the signers."

In Tiffany on Real Property, 3rd edition, vol. 1, chap. 3 §25, freehold estates are defined as follows:

"The primary classification of estates is into 'estates of freehold,' or 'freehold estates,' and 'estates less than freehold.' Freehold estates, the distinctive characteristic of which is that the period of their duration is not positively ascertained, obtain the name of 'freehold' from the fact that the typical holding by a free man under the feudal system, a 'free tenement,' as it was called, was always associated with a right in the land enduring for such a period of uncertain termination."

The institution district is not the owner of this land in the sense that it, as a district, has a right in the land enduring for a period of uncertain termination. On the contrary, because of the provisions of the Act of 1937, supra, the institution district, a State agency, does not have the same rights as does an individual owner or a corporation.

". . . the Commonwealth has absolute control over such agencies with power to add to or subtract from the duties to be performed by them or to abolish them and take the property used for public purposes without compensating the agency therefor": Pennsylvania Turnpike Commission Land Condemnation Case, 347 Pa. 643, 648.

The institution district makes the claim that we should conclude that it is a freeholder because to do otherwise would lead us to a result that there could be no annexation of the lands as long as the institution district owns them, and with a resultant loss to the institution district in that the real estate developers or the owners of land generally, would reap the benefits of an enhanced value resulting from annexation to the

Borough of Shillington. Whether or not the value of land will be enhanced by annexation to the borough, we are unable to state. William Stottlemeyer and Wayne Leinbach, real estate experts, called on behalf of the Borough of Shillington, testified that some purchasers of lots in the 371 acres, 149.25 perches, tract might prefer to have the lots located in the Borough of Shillington and others might prefer to have them located in the Township of Cumru, according to the use to which the property may be put.

Even though we would have concluded that the institution district is a freeholder, does it have the right to sign the annexation petition? In section 305 of the Act of June 24, 1937, supra, the powers and duties as to county institutions district property are set forth as follows:

"As a function of the institution district and with its funds, the commissioners of each county shall have the power and it shall be their duty:

(a) With the approval of the Department of Welfare to acquire, by purchase or the right of eminent domain, lands and buildings for the care of dependents and for farms, taking title in the name of the county institution district;

(b) To erect, equip, maintain, repair, alter and add to institutions for the care of dependents, and to equip, maintain, cultivate and improve farms, using their produce for the support of dependents. Any plan for the erection or substantial alteration of an institution must be approved by the Department of Welfare;

(c) To sell or lease real and personal property of the institution district;

(d) To pay the other necessary expenses of the institution district."

The tract in question is now being used as a farm. One of the county commissioners, Mr. Wagner, testified that they seek to discontinue such a use and, in-

stead, the commissioners consider it advisable to sell the land so that it can be built upon. It must be conceded that the district has a limited right to sell. However, if practically all of the land owned by the institution district is to be annexed to the Boroughs of Shillington and Kenhorst and its use as a farm discontinued, we would have a substantial alteration of this institution. This cannot be done without the approval of the Department of Welfare.

The Act of 1937 was held constitutional by the Supreme Court. (See Poor District Case (No. 1), 329 Pa. 390.) At page 406, the court points out:

"There is no unusual power conferred upon the State Department of Welfare and no control vested in it over the institution district. In fact the Department is given no power to perform a municipal function. The sole purpose of the sections here attacked is to constitute the State Department of Welfare a coördinating and standardizing nucleus for the whole institution district system. It can advise action by commissioners, check action where ill-advised, prescribe forms in which certain routine matters are to be done, but it cannot itself act in their place."

In support of its position, the court relied upon Baldwin Township's Annexation, 305 Pa. 490, 496. In this case, the State Council of Education disapproved a proposed annexation of a part of a township to a city. Here, the council of education had an option to either approve or disapprove. When it disapproved it was (see page 496) "simply doing something officially to make nonoperative in a specific instance an annexation law which if the state council had given its approval would be operative in that particular instance."

In the instant case the institution district took definite and positive action, as pointed out, to have practically the whole of the farm land of the institution made parts of the Boroughs of Shillington and Ken-

horst, with a result that this will be a substantial change to the institution as we now know it. This is only one of the steps which the institution district is contemplating. It is proposed to submit to the electorate the question whether or not an indebtedness should be incurred, the money so raised to be used to build a new hospital, not upon the present farm site, but at a different location. Manifestly, if the vote is favorable, this is what the institution district will do. Most of these steps, we submit, should not be taken unless and until they have been approved by the Department of Welfare.

At the argument inquiry was made as to whether or not the matter was submitted to the Department of Welfare and the reply was, "Not as yet" but they contemplated doing so. Since the Department of Welfare "can advise action by commissioners, check action where ill-advised" we say that since there has been no opportunity for the Department of Welfare to give such advice, we must conclude that the institution district cannot bring about a result such as we have pointed out would come upon the community if there was the annexation of practically all of the lands of the poor district.

Counsel for the parties involved in this litigation have ably argued the question of the propriety of the contemplated annexation. In view of our decision that the Institution District of Berks County is not a freeholder, it becomes unnecessary for us to discuss the propriety of the annexation proceedings. We are merely deciding that the officials of the institution district have no standing under the act of assembly relating to annexation to petition for any such annexation.

We are not to be understood as expressing any disapproval of the over-all project of the institution district as revealed in the record; for the removal of the

county home to the so-called Essick tract, popularly designated as the county welfare farm, and the subsequent disposal of the land which is here sought to be annexed, if the voters of the county at the forthcoming election express their approval of such disposal.

A decision as to the propriety of the annexation of this area to any other municipality must await the time when there are freeholders authorized by law to petition for annexation.

And now, to wit, July 20, 1949, the appeal is sustained.